**COPY**

06-2327-Palermo

```
 BOP56  600.00 *            SECURITY/DESIGNATION          *      03-14-2006
PAGE 001 OF 001 *                 DATA                    *      12:31:43
      REGNO: 13535-007   NAME: RICHARDSON, LATOYA                   ORG: BOP
RC/SEX/AGE: B/F/28  FORM D/T: 03-14-2006/1229   RES: BROOKLYN, NY 11212
OFFN/CHG..: TREATY TRANSFER FROM PANAMA - MARCH 2006.
            INTERNATIONAL DRUG TRAFFICKING - 64 MONTHS
CUSTODY...: IN        BIL:            CR HX PT: UNK   CAR: SCRN1
CITIZENSHP: UNITED STATES OF AMERICA  PUB SAFETY: NONE
CIM CONSID:                                      USM: /
JUDGE.....: PANAMA COURT REC FACL:           REC PROG:
DETAINER..: NONE      SEVERITY: HIGH      LENGTH..: 13-59 MOS   (024)
PRIOR.....: NONE      ESCAPES.: NONE      VIOLENCE: NONE
PRECOMMT..: N/A       V/S DATE:           V/S LOC.:
OMDT REF..: NO        SEC TOT.: 6         SCORED LEV: MINIMUM
CCM RMKS..: 12/02 ARRST @ HOME W/11,305.2 GMS HEROIN & .48 GMS MARIJUANA.
            ATTMPT TRANSPORT DRGS TO U.S. NO PRIOR RECD. NO PRISON MISCON
            DUCT IN PANAMA. MED: GOOD. TB:NEG. CONSENT HRG 1/30/06. TSF TO
            US 3/06. REQ TREATY TSF PAROLE HEARING. SK
DESIG: MIAMI FDC-FEMALES        BOP SK  03-14-2006 RSN: MGMT    MSL:
MGTV/MVED.: PGM PAR   03-14-2007
DESIG RMKS: TREATY TSF FM PANAMA 3/23/06. PAROLE HEARING REQD. REVIEW FOR
            SECONDARY DST AFTER HEARING. LIMITED INFO AVAILABLE.

 G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

*MINISTERIO DE GOBIERNO Y JUSTICIA*
*DIRECCION GENERAL DEL SISTEMA PENITENCIARIO*
*DEPARTAMENTO DE SALUD*

*Panamá 8 de marzo del 2006*
*Nota No.450-DGSP/SP*

*Licenciado*
**ANIBAL VERGARA**
*Jefe del Departamento de Asesoría Legal*
*E.                     S.                     D.*

*Licenciado Vergara:*

*En contestación a oficio 357, con relación a toma de radiografia Pulmonares a las internas:*

| Nombre de los diferentes internos: | Centros Penales: |
|---|---|
| 1-La Toya Richardson | Centro Femenino de Panamá. |
| 2-Cristopher Oniel Cheen | Centro de Rehabilitación Renacer. |

*Ambos estudios según lecturas del médico Radiólogo Descartan que exista Enfermedad Pulmonar.*

*Sin otro particular se despide de usted,*

*Atentamente,*

*Dra. Omaira E. Visuete R.*
*Medicina General*
*Cód. V449 Reg. 5830*

**Dra. OMAIRA VISUETE**
*Jefa del Departamento de Salud Penitenciaria*

OV/ha
*Adjunto lo indicado*

MINISTERIO DE GOBIERNO Y JUSTICIA
Dirección General del Sistema Penitenciario
Departamento Legal
Fecha 14/3/06   Hora   Recibe
9:35

(They are OK

regards,

Mayn

FROM : JUDICIAL.DGSP          PHONE NO. : 2122156          Mar. 13 2006 08:51PM P3



# HOSPITAL SANTO TOMAS

## SOLICITUD DE ESTUDIOS DE IMAGENOLOGIA

Nombre: __LATAISA__                          Apellidos: __RICHARDSON__

S Social NO ☐   SI ☐   # SS _____   Sexo: _____ Fecha (D) ____ (mes) _____   (año) _____

DIRECCION _____ código Región _____ Teléfono _____ 28a

Cons. Ext.: ☐ Código Especialidad: _____ Sala: AMB   Cama: _____ Edad: _____

HISTORIA CLINICA: _____

_____ I.D.: _____

EXAMENES SOLICITADOS   1. _____ Código estudio: _____
                        2. _____ Código estudio: _____
                        3. _____ Código estudio: _____

MEDICO: _____ Registro: _____ Fecha: _____

(D) _____ (M) _____ (A) _____   Obs./Tec./Firma/Fecha: _____

### I N F O R M E

3/3/06

TORAX, PA.:

PLEUROCARDIOPULMONAR NEGATIVO.

TB info

Dr. _____
MEDICO _____
DR. R. AMELL
RV

Fecha _____          Radiólogo _____

**"SERVER CON EFICIENCIA, PROFESIONALISMO, CALIDAD Y HUMANISMO"**

13535-007:

*Atte: Emily Maynard.*

*Thank you*

*maynL.*

**FILED**

JAN 3 0 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

Place of hearing: PANAMA CITY, PANAMA    DOCKET NUMBER: EP-06-M-00350-G

Date: January 30, 2006

### VERIFICATION OF CONSENT TO TRANSFER TO THE UNITED STATES FOR EXECUTION OF PENAL SENTENCE OF THE REPUBLIC OF PANAMA

I, LATOYA RICHARDSON, having been duly sworn by a verifying officer appointed under the laws of the United States of America, certify that I understand and agree, in consenting to transfer to the United States for the execution of the penal sentence imposed on me by a court of the Republic of Panama that:

1.  My conviction or sentence can only be modified or set aside through appropriate proceedings brought by me or on my behalf in the Republic of Panama;

2.  My sentence will be carried out according to the laws of the United States;

3.  If a court of the United States should determine upon a proceeding brought by me or on my behalf that my transfer was not accomplished in accordance with the treaty or laws of the United States, I may be returned to the Republic of Panama for the purpose of completing my sentence if the Republic of Panama requests my return; and

4.  Once my consent to transfer is verified by the verifying officer, I may not revoke that consent.

I have been advised of my right to consult with counsel, and have been afforded the opportunity for such consultation prior to giving my consent to transfer. I have been advised that if I am financially unable to obtain counsel, one would be appointed for me under the laws of the United States of America free of charge. My consent to transfer is wholly voluntary and not the result of any promises, threats, coercion, or other improper inducements. I hereby consent to my transfer to the United States for the execution of the penal sentence imposed on me by a court of the Republic of Panama.

_____
LATOYA RICHARDSON, Transferee

SUBSCRIBED before me on this 30th day of January, 2006. Based on the proceedings conducted before me, I find that the above consent was knowingly and understandingly given and is wholly voluntary and not the result of any promises, threats, coercion, or other improper inducements.

_____
HON. NORBERT J. GARNEY
United States Magistrate Judge
Western District of Texas
Verifying Officer

OEO/IPTU 30-AN-English
Revised 2/03

```
Message Accepted and Routed
JCOEO 00014 AT 09:22  01/12/2006
MRI-1020360

 ------------------------------------------------
DCDOJ0015.*MRI1020360.
MESSAGE FROM NCIC
NO IDENTIFIABLE RECORD IN THE NCIC INTERSTATE IDENTIFICATION INDEX
(III) FOR NAM/RICHARDSON,LATOYA.DOB/19771007.SEX/F.RAC/U.SOC/124609646.
PUR/C.
END


09:22:58 01/12/06


 ------------------------------------------------
```

UNCLASSIFIED
PROG 12/07/05
CONS: SALEXANDER
CONS: MLUACES
CONS: DSTEIGERWALT
CONS

AMEMBASSY PANAMA
SECSTATE WASHDC

DEPT FOR L/LEI FOR MTAYLOR AND GHARRIS AND CA/OCS FOR
MMUELLER

E.O. 12958: N/A
TAGS: CJAN, CASC, PM (RICHARDSON, LATOYA)
SUBJECT:  PRISONER TRANSFER REQUEST – RICHARDSON, LATOYA

A:  03 PANAMA 3038
B:  PANAMA 1996

On November 21, 2005, the General Directorate of the Panamanian
Penitentiary System provided Embassy with certified copies
and/or originals of the following documents necessary for the
transfer of LATOYA RICHARDSON:

-- Final sentence (which describes the facts and circumstance
surrounding the offense) of Ms. Richardson;

-- Social, psychological, and medical reports from the prison
social worker, psychologist, and physician regarding the
prisoner;

---Prison records indicating date arrested, date sentenced, and
total time of the sentence.  The form does not specify any
remission work credits.  According to Panamanian law, prisoners
convicted of narcotics offenses must serve out their complete
sentences.

1. NAME: RICHARDSON, LATOYA

2. DATE OF BIRTH: OCTOBER 7, 1977

3. PLACE OF BIRTH: BROOKLYN, NEW YORK

4. EVIDENCE OF U.S. CITIZENSHIP: BIRTH CERTIFICATE AND PHOTO ID
(requested from court and to be reviewed by Consular Section)

5. SOCIAL SECURITY NUMBER: 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.

6. U.S. ADDRESS:  60 Glenmore Avenue, Apt. 13-F, Brooklyn, NY 11212.

7. DATE AND PLACE OF ARREST:  15 December 2002, Colon, Republic of Panama.

8. CHARGES:  International Drug Trafficking (heroin, 11,305.20 grams and marihuana, 0.48 grams).

9. SENTENCE AND DATE IMPOSED:  Sixty-four months (64), imposed August 20, 2004.

10. DATE OF FINAL SENTENCING AND STATUS OF APPEALS OR COLLATERAL ATTACKS ON THE JUDGEMENT: June 1, 2005.  No appeals pending.

11. FINE AND RESTITUTION AMOUNT AND PAYMENT STATUS: N/A for Panama

12. OFFENSE DESCRIPTION:  On December 2002, Panama Judicial Technical Police received a tip that two American citizens were to arrive in the port of Colon with the purpose of picking up drugs to be transported to the United States.  The two Americans, one of whom was identified as Ms. Richardson, were followed as they boarded a bus and entered a dwelling.  Police then detained the Americans, along with the dwelling's occupants.  The Americans were found in possession of 11,305.20 grams of heroin and .48 grams of marijuana.

13. TERMINATION DATE OF SENTENCE:  15 April 2008.

14. DATE PRISONER WOULD BE ELIGIBLE FOR PAROLE OR OTHER EARLY RELEASE INCLUDING GOOD CONDUCT OR LABOR CREDIT:  According to Panamanian law, those convicted of narcotics offenses must serve out their complete sentence.  Richardson began serving her 64 month sentence on 15 December 2002.  Richardson's 64 month sentence already reflects a one third reduction made at the time of sentencing.

15. ADVERSE INCIDENTS REPORTED DURING INCARCERATION:  None.

16. SECURITY/CUSTODY LEVEL:  Richardson is incarcerated at the Centro de Rehabilitacion Femenina de Colon, a medium security prison.

17. PRIOR CRIMINAL RECORD:  Unknown.

18. SOCIAL DATA:  According to the social worker's report, Ms. Richardson resided in the United States with her biological mother, who is 43 years old.  Her father lived with them only until she was one year of age.  Ms. Richardson has no affective ties with her father.  She has participated in various events at the detention center, such as church activities, plays, and a sales clerk at the prison's store.  According to Ms. Richardson she has not participated in other educational activities due to her lack of language knowledge.  Ms. Richardson is looking forward to her transfer to the United States due to the lack of affective and material support as she has no family in Panama. She feels sorry for what she has done and that it is her fault that her mother is alone.

19. PSYCHOLOGICAL EVALUATION:  According to the psychologist's evaluation, prior to visiting Panama, Ms. Richardson was in her second year of nursing school.  Ms. Richardson indicated that she has ended her relationship with her significant other, who was not sincere and just with her, and is author of her confinement and exile.  She accepts her participation in the crime because she was with her boyfriend and brought the drug, but feels innocent because she came to Panama with the intention of vacationing and did not know her boyfriend's plan.  She maintains communication with her mother in the United States and feels guilty of her mother's pain due to her incarceration.  Ms. Richardson has goals for self improvement, principally returning to the United States and completing her studies.  Although her Spanish is not perfect, she can speak with substantial fluency. The shows evidence of emotional stability.

20. CURRENT MEDICAL CONDITION: According to the doctor's report, she is in generally good mental and physical health. Nonetheless, on September 22, 2005 Ms. Richardson told ConOff that she had a cyst on her right ovary (see reftel B).

21.  Certified copies and original documents pertaining to this case are being sent via DHL to Paula Wolff, Chief, IPT, Office of Enforcement Operations, 1301 New York, Avenue, NW 12th Floor, Washington, DC 20005.

Eaton



*Embassy of the United States of America*

Panama, Republic of Panama
December 14, 2005

Ms. Paula Wolff
Chief, International Prisoners Transfer
Office of Enforcement Operations
1301 New York Avenue, NW 12th Floor
Washington DC 20005

Dear Ms. Wolff:

    We are enclosing for your consideration, documents provided by the Government of Panama in support of Ms. Latoya Williams' request for transfer to the United States under the prisoner exchange program between Panama and the United States.

    We have previously submitted documents for requestors Christopher O'Neil Chin and Carlos Bustamante.  Ms. Williams is our third and last applicant for this transfer.

    Two other American citizens, Frank and Sandy Luzer applied for the transfer but their requests were denied by the Panamanian Government as stated in our letter of August 26, 2005 addressed to you.

Sincerely,

Debra A. Steigerwalt
Vice Consul

Enclosure: as stated



## *República de Panamá*

MINISTERIO DE GOBIERNO Y JUSTICIA
DIRECCIÓN GENERAL DEL SISTEMA PENITENCIARIO
PANAMA I, PANAMA

*Panamá, 9 de noviembre de 2005.*
*Nota No.1667-DGSP.DAL.*

*Honorable Señora*
**DEBRA STEIGERWALT**
*Cónsul Encargada de Ciudadanía Americana*
*Embajada de los Estados Unidos de América*
*E.    S.    D.*

*Señora Cónsul:*

*Le remito el expediente de la privada de libertad de nacionalidad estadounidense **LATOYA MONIQUE RICHARDSON RICKS**, recluida en el Centro Femenino de Colón, con la finalidad que el formulario de la toma de huellas dactilares sea firmado y sellado.*

*Una vez culmine este proceso, le solicito que el mismo sea devuelto a este Despacho, para proseguir con los trámites correspondientes.*

*Le presento las muestras de mi consideración y respeto.*

**DR. JOSÉ ALBERTO CALDERON A.**
*Director General del Sistema Penitenciario*

AIS/idec

# REPÚBLICA DE PANAMÁ
## MINISTERIO DE GOBIERNO Y JUSTICIA
## DIRECCIÓN GENERAL DEL SISTEMA PENITENCIARIO

**CENTRO PENITENCIARIO** FEMENINO DE COLON.

Panamá, 06 de Octubre de 2005 .

Doctor
**JOSÉ ALBERTO CALDERÓN**
Director General del Sistema Penitenciario
E.   S.   D.

Quien suscribe LATOYA MONIQUE RICHARDSON RICKS ,

portador (a) de la cédula de identidad o pasaporte No. 739.456.890 , de

nacionalidad ESTADOUNIDENCE , actualmente recluido (a) en el

Centro FEMENINO DE COLON , detenido por el delito

de TRAFICO INTERNACIONAL DROGAS desde el día 15 de Diciembre de 2002

cumpliendo la pena de 64 meses de prisión , impuesta por el

JUZGADO SEGUNDO DEL CTO. COLON , con plena capacidad para

discernir, actuando en nombre propio y declarando por medio del presente

documento, libre de violencia, coacción e intimidación alguna, otorgo mi

**CONSENTIMIENTO EXPRESO**, a fin de que se tome en cuenta para mi

traslado hacia mi país de origen, acogiéndome al Tratado o Convenio suscrito

entre mi país y la República de Panamá.

**Nombre:** _Latoya, Monique, Richardson, Ricks_

**Firma:** _Latoya, Monique, Richardson, Ricks_

**Cédula /Pasaporte:** 739-456-890

**Huella dactilar del Pulgar
de la mano derecha**



# REPUBLICA DE PANAMA

### MINISTERIO DE GOBIERNO Y JUSTICIA
### DIRECCION GENERAL DEL SISTEMA PENITENCIARIO

### TRATADO SOBRE EJECUCION DE SENTENCIAS PENALES
### SUSCRITO ENTRE LA REPUBLICA DE PANAMA Y LOS
### ESTADOS UNIDOS DE AMERICA

A Su Excelencia
**HECTOR ALEMAN**
Ministro de Gobierno y Justicia
Ciudad de Panamá
E.        S.        D.

Señor Ministro:

Yo, __LATOYA MONIQUE RICHARDSON RICKS__, con cédula de identidad personal y/o Pasaporte N°. __739,456,890__, nacido (a) en __NUEVA YORK, ESTADOS UNIDOS__, de __28__ años de edad, de __1.72__ m. de estatura y __180__ lbs. de peso, recluido en el Centro Penitenciario __FEMENINO DE LA PROVINCIA DE COLON.__, cumpliendo pena de __SESENTA Y CUATRO (64) MESES__ de prisión impuesta por el Juzgado __SEGUNDO DEL CIRCUITO JUDICIAL DE COLON__, por la comisión del delito de __TRAFICO INTERNACIONAL DE DROGAS__, en forma libre y espontánea solicito a usted, de conformidad con el Tratado de referencia, ser trasladado a mi país de origen, para terminar de cumplir la pena impuesta por las autoridades competentes de la República de Panamá.

## MANO IZQUIERDA

| MEÑIQUE | ANULAR | MEDIO | INDICE | PULGAR |
|---------|--------|-------|--------|--------|
|         |        |       |        |        |

## MANO DERECHA



VICE

Debra A. Steigerwalt

El Cónsul de ~~ESTADOS UNIDOS DE AMERICA~~ ~~xxxxxxxxxxxxxx~~ , en Panamá certifica que la firma y las huellas digitales que anteceden corresponde al prenombrado interno.

Firma del Interno que presenta la solicitud

_Latoja Monique Richardson Licks_

Firma del Director del Centro Penitenciario

_Nora Jaén de Pérez_

Firma del Director General del Sistema Penitenciario

Firma del Cónsul

Vice Consul of the
~~United States of America~~

Dada en la ciudad de Panamá, República de Panamá. a los _____

CIRCUITO JUDICIAL DE COLÓN, RAMO PENAL

VEINTE (20)   Σ AGOSTO DE DOS MIL CUATRO   2004.-

SENTENCIA CONDENATORIA: Nº 123.

V I S T O S :

El día 19 de mayo de 2004 se verificó el acto de audiencia preliminar correspondiente al proceso adelantado en contra de los ciudadanos ALEXANDER QUINTERO, CANDIDO ALEXIS MONTENEGRO MORA, VANESSA RUIZ DE MONTENEGRO, ALEJANDRO JAMES WILSON, JAHAIRA ZUÑIGA ARAYA, DONDI FOGLE Y LATOYA RICHARDSON, todos sindicados por delito Contra la Salud Pública (drogas).-

La audiencia fue presidida por el Titular del Despacho contándose con la presencia de la Fiscal de Drogas de Colón Licda. Aminta Mariela Corro, los sindicados y sus abogados defensores Licda. Maritcenia Palacios (Latoya), Licdo. Cecilio Castillo (Fogle); estos dos de la Defensoría de Oficio.  el Licdo. Ricardo Cerezo (Cándido y Vanessa Montenegro), Licda. Yovanni Garrido (Quintero), Licda. Xiomara Ríos (James y Zúñiga).-

Como quiera que dos de los implicados no dominan el idioma español, actuó en este acto de audiencia como intérprete la señora Xenia Contreras.-

La audiencia prosiguió bajo los trámites de juicio abreviado, resultando con el encausamiento penal de los sindicados, como probables vulneradores de disposiciones contenidas en el Capítulo V, Título VII, del Libro II del Código Penal; o sea por delito CONTRA LA SALUD PÚBLICA relacionado con drogas cargos de los que se declararon

- 2 -

culpables Jahaira Zúñiga Araya, Alejandro James Wilson, Dondi
Fodgle y Latoya Richardson, ésta última precisó ser
responsable por tener la droga adherida a su cuerpo, en tanto
se declararon inocentes Alexander Quintero y Vanessa Ruíz de
Montenegro.    Candido Montenegro resultó sobreseído
provisionalmente.-

Hizo uso de la palabra la Fiscal de la causa solicitando
la condena de la totalidad de los procesados como autores de
delito de Tráfico Internacional de Drogas, ha excepción de
Vanessa Ruíz de Montenegro a quien consideró como cómplice
secundaria de dicho delito, dejando por cuenta del Tribunal el
determinar el grado de colaboración que pudiesen haber tenido
algunas de estas personas, así como circunstancias atenuantes
y demás, aunque resaltando la colaboración brindada por
Alexander Quintero.-

Los abogados defensores de los implicados que aceptaron
su responsabilidad penal, solicitaron que se tome en cuenta
para estos al momento de dosificarse la respectiva pena, que
se tome en cuenta el juicio abreviado a que se acogieron y su
declaratoria de culpabilidad, aunque la defensa de Latoya
Richardson procuró explicar que ésta debido a que no domina
nuestro idioma no ha sabido explicarse, pero en realidad ella
fue obligada a portar la droga en su cuerpo, lo que se deduce
no solo de la declaración de Dondi Fogli, sino también de lo
declarado por Alejandro James cuando manifestó que escuchó a
una mujer llorar y esa era Latoya, y no ha conexión de esta
con alguno de los otros procesados, ponderando la Licda.
Maritcenia Palacios que su representada llegó engañada al
Territorio Nacional, por lo que estima que todo esto debe ser
analizado sin que pueda ubicársele como autora o encubridora
del delito, ya que sin dolo no puede ser condenada una

-- 3 --

persona, por todo lo cual debe ser favorecida con una sentencia absolutoria o ubicársele dentro de algún tipo de participación que no sea primaria.--

La defensa técnica de Dondi Fogle solicitó que al momento de elaborarse la sentencia se le tomen en cuenta las atenuantes resultantes de su confesión y el juicio abreviado a que se acogió, además de haber brindado información que permitió la ubicación otros implicados en el delito, lo que encaja con la cooperación de que se habla en el artículo 28 de la Ley 13 de 27 de julio de 1994 sobre delitos de drogas.--

La Licda. Yovanni Garrido hizo uso de la palabra acto seguido, en representación de Alexander Quintero, indicando discrepar con el argumento del Ministerio Público debido a que desde el inicio de la investigación no se apuntaba directamente hacía Quintero, quien desde el inicio cooperó pero no por ser culpable sino precisamente porque quien es inocente dice lo que sabe, y Quintero explicó detalladamente el por qué de su presencia en los lugares indicados y el por qué de no conocer a los ciudadanos Costarricenses, y también quedó establecido que se le contrató para un trabajo legal como conductor, la cual era su relación con estos ciudadanos, tal y como había sido contratado anteriormente, y la cocaína venía disimulada y no pudo darse cuenta de lo que se trataba.--

Luego de elaborar otros argumentos en su alegato que reposa de fojas 638 a 642 del expediente, la Licda. Garrido demandó una sentencia absolutoria para su defendido.--

Hizo uso de la palabra a continuación el Licdo. Ricardo Cerezo, explicando en cuanto a Vanessa Ruíz de Montenegro, que ésta no pudo haber tenido conocimiento del contenido ilícito

debe ser establecido, por lo que no puede ser declarada culpable no como cómplice secundaria de este delito, todo lo cual es acorde a su declaraciones, incluso se le prometió pagarle por permitir a los turistas cambiarse en su vivienda, a solicitud de su hermano Alexander Quintero, y no le correspondió ni mover ni abrir los maletines en que iba la droga.-

En extenso argumento que reposa de fojas 642 a 647 del expediente, el Licdo. Ricardo Cerezo solicitó la absolución de Vanessa de Montenegro de los cargos formulados en su contra.-

En su turno la Licda. Xiomara Ríos de Vallarino solicitó la revisión de la actuación a fin de determinar una serie de irregularidades violatorias del debido proceso, lo que a su juicio acarrea la nulidad del proceso, citando jurisprudencia al respecto y elaborando de manera paralela una serie de argumentos destacando todos los elementos existentes en favor de sus representados, insistiendo en la situación de nulidad que según su criterio impera en este proceso.-

Encontrándose el proceso en estado de emitir la respectiva sentencia que ponga fin a la primera instancia, a ellos se procede inmediato.-

ANTECEDENTES

En el mes de diciembre del año 2002, la Oficina de Estupefaciente de la P.T.J. de Colón, recibió información que indicaba que personas de nacionalidad estadounidenses llegarían al Puerto de Cruceros Colón 2000 de esta ciudad de Colón, en donde se contactarían con otro ciudadano para la obtención de drogas que serían llevadas a los Estados Unidos de América.-

Efectivamente atraco el crucero indicado del cual descendieron dos turistas que fueron seguidos hasta el Hotel

Washington, en donde abordaron un busito color amarillo al cual siguieron hasta una vivienda ubicada en la Barriada Villa Guadalupe, en donde fueron interceptados y detenidos sus ocupantes, quienes fueron identificados como Alexander Quintero, de nacionalidad panameña y quien conducía el vehículo, los costarricenses Alejandro James Wilson y Jahaira Zuñiga, además de los norteamericanos Dondi Fogle y Latoya Richardson.-

A estos dos últimos se encontró en su poder la droga identificada como heroína en una cantidad de 11.305.20 gramos, además de marihuana en una cantidad de 0.48 gramos.-

También fue detenida para su investigación la propietaria de Villa Guadalupe, Vanessa de Montenegro, quien explicó que su hermano Alexander Quintero le llevó unos turistas para cambiarse de ropa por lo cual le pagó la suma de B/.100.00 asegurando desconocer que en el maletín que llevaban había drogas, insistiendo mucho en que su esposo Cándido Montenegro no sabía lo que estaba ocurriendo.-

Se verificó allanamiento a la habitación 2148 del crucero Carnivall Spirit, en donde entre otras cosas se encontró una fotografía correspondiente a Alejandro James Wilson.-

Se recibió indagatoria al conductor del busito Alexander Quintero, quien hizo un largo relato explicando la forma en que conoció a Alexander en la República de Costa Rica, a quien atendía cuando venía de visita o de compras a Panamá, rindiendo un detalle de lo sucedido en este último viaje, afirmando que en ningún momento tuvo conocimiento de que éste anduviera en algún asunto de drogas, ni se le dió algún dinero adicional al que le correspondía por manejar al busito.-

Vanessa Ruíz de Montenegro brindó una explicación más

detallada de la forma en que su hermano Alexander llevó a los ciudadanos extranjeros a su casa simplemente para que les guardara temporalmente su equipaje, a cambio de lo cual le pagaron la suma de B/.100.00.-

Candido Montenegro, esposo de Vanessa declaró asegurando no tener conocimiento ni relación con el asunto investigado.-

Alejandro James Wilson después de varios intentos rindió declaración indagatoria en forma similar a lo explicado por Jahaira Zuñiga, negando estar enterados del contenido ilícito de los maletines asó como de haber ayudado a los norteamericanos a colarse las fajas en que iba la droga, haciendo un relato e la forma en que Alejandro recogió a los norteamericanos sin saber ellos del asunto.-

Dondi Fodgle rindió indagatoria explicando la forma en que fue contactado para trasladarse a la República de Panamá abordo de un crucero, país en donde serían recibidos por una persona que le proporcionaría finalmente un paquete que tenía él que ponerlo en una bolsas y dejarlo abordo del barco asegurando que otra persona recogería el paquete que él sabía que se trataría de droga, agregando que pidió a quien lo contrató que necesitaba una acompañante, para lo cual buscó a Latoya, a quien sin embargo no dijo lo que iba a suceder . Hizo un relato de la forma en que ubicó a sus contacto en la ciudad de Colón quien le explicó la forma en que se transportaría la droga y le ayudó a colocarsela encima, afirmando que le solicitó a Latoya dejarse poner también envoltorios de drogas alrededor del cuerpo.-

Latoya explicó por su parte que al momento de percatarse que a Dondi le estaban adhiriendo algo al cuerpo se puso nerviosa pero éste finalmente le habló en tono fuerte y agresivo para que se dejara también poner una de las cintas.

lo cual dejó hacer llorando porque no tenía otra alternativa.-

Jahaira Zuñiga aseguró presenciar cuando en caso de Vanessa Alexander entró a una de las habitaciones con los americanos, mientras ella quedó en la Sala con Alejandro y Vanessa, y al cabo de unos minutos salieron todos y abordaron el busito, siendo detenidos en la terminal de cruceros y dándose cuenta en ese momento que los americanos llevaban droga, asegurando no tener conocimiento de esta situación y negando también haber ayudado a estos señores a colocarse la fajas contentiva de la droga.-

En el mismo sentido declaró Alejandro James Wilson, y agregando que la fotografía suya encontrada en el crucero se la dio a Alexander la última vez que él estuvo en Panamá, percatándose ahora que éste envió su fotografía a los Estados Unidos sin su consentimiento, explicándole a unos norteamericanos amigos de él que sería su traductor.-

En diligencia de careo verificada ente James y Quintero, éste último se ratificó en que cuando recogió a Alejandro Jahaira en el Hotel Venecia, éstos montaron unos maletines al busito, insistiendo Quintero en posterior ampliación de declaración en que no tenía conocimiento de que estuviese transportando drogas, y que estaba siendo amenazado por Alejandro James para que se echara la culpa.-

También se verificó diligencia de careo entre el americano y el costarricense, manteniendo básicamente cada uno sus posiciones.-

### HECHOS PROBADOS

Como resultado de un operativo de vigilancia y seguimiento ejecutado por unidades de la División de Narcótico de la Policía Técnica Judicial de Colón, el día 15 de diciembre del año 2002 se interceptó el busito colegial color

amarillo con matrícula 225176 conducido por Alexander Quintero, de nacionalidad panameña, y en el que viajaban además Alejandro James Wilson y Yahaira Zúñiga Araya, ambos de nacionalidad costarricense, y los ciudadanos oriundos de Estados Unidos de América, Dondi Fogle y Latoya Richardson. Adherida a la anatomía de estos últimos se ocupó una serie de fajas contentivas de lo que resultó ser la droga conocida como heroína en la cantidad de 11,305.20 gramos, o sea algo más de 11 kilos. También está establecido en este proceso penal, que las fajas contentivas de la droga fueron adheridas al cuerpo de esta persona, en la vivienda Nº 34-B ubicada en Villa Guadalupe, Cativá, Provincia de Colón, perteneciente a los señores Cándido Montenegro y Vanessa Ruíz de Montenegro, ésta última hermana de Alexander Quintero, conductor del busito en que se movilizaban los extranjeros. Esta vivienda fue allanada y sometida a registro, encontrándose allí similar ropa interior y una faja también contentiva de sustancia ilícita, incluida dentro de la cantidad arriba anotada.-

## FUNDAMENTOS LEGALES

**PRIMERO:** El hecho punible objeto de esta investigación penal quedó debidamente acreditado en autos, luego de que el resultado del análisis de laboratorio verificado sobre el contenido de las fajas que llevaban adheridas a su cuerpo los ciudadanos norteamericanos, arrojara como resultado que se trataba de la droga conocida como heroína en una cantidad de 11,305.20 gramos. En la diligencia de registro verificada al camarote 4148 del Crucero Carnival Spirit, se ocupó un envoltorio de papel plateado contentivo de lo que resultó ser marihuana en una cantidad de 0.48 gramos, empero como las

investigacione  estaban encaminadas a escl ecer el asunto de la heroína, no logró determinarse la propiedad de esta droga destinada al mero consumo personal.-

**SEGUNDO:** El tipo penal vulnerado es el que viene descrito en el artículo 255 del Código Penal, en donde se sanciona con pena de 8 a 15 años de prisión a aquella o aquellas personas que saque o intente sacar droga de nuestro territorio nacional con destino hacia otros países, ya sea en tránsito o tráfico internacional.  Ello es así toda vez que si bien no pudo establecerse de dónde salió la droga, sí quedó claro que la misma sería sacada del país por parte de estos ciudadanos norteamericanos, quienes viajaban a bordo del mencionado Crucero que había atracado en nuestro país, en tránsito.-

**TERCERO:** Además de lo ya anotado dentro de los antecedentes en cuanto a los argumentos de los abogados defensores, destacó en el acto de audiencia ciertas particularidades en la que estos hicieron énfasis, a saber: la Licda. Maritcenia Palacios, en su condición de abogada defensora de **Latoya Richardson**, resaltó el hecho de que a ésta se le adhirió la droga al cuerpo de una manera obligada, bajo la amenaza de su compañero Dondi Fogle, por lo que no pudo actuar de otra manera, situación que se deriva de lo declarado por este señor y confirmado por otro procesado, Alejandro James, quien en su declaración aseguró que escuchó a Latoya llorar al momento en que la vestían, por lo que esta abogada defensora consideró que debía ser absuelta o en todo caso la participación de su patrocinada no podía ser ubicada ni como autora del delito ni como cómplice primaria del mismo, tomando en cuenta que no actuó con el dolo o intensión de que se habla en el artículo

30 del Código Penal.-

Al respecto, si bien es cierto se afirma que Latoya fue forzada y lloró en el momento en que la droga era adherida a su cuerpo, ello implica que al menos se percató de lo que se estaba dando, tomando en cuenta que lloró pero no reclamó ni se resistió con energía a esta situación. No fue así y todo indica que sabía de lo que se trataba, por lo que no encuentran asidero del todo los argumentos elaborados por la defensa, y siendo el caso que era Latoya Richardson una de las personas que sacaría la droga de nuestro país en tránsito o tráfico internacional, se le ubica como **cómplice primaria** de dicho delito, anotando que definitivamente su grado de culpabilidad, propiamente hablando, no puede ser el mismo que el de su compañero Dondi Fogle, quien era la persona quien controlaba la situación que se estaba dando en cuanto a conocimiento de causa, ejecución, etc.-

**CUARTO:** El Licdo. Cecilio Castillo, encargado de la defensa de **Dondi Fogle,** solicitó que para éste se tomase en cuenta al momento de resolver su situación jurídica, su confesión, el hecho de que no registra antecedentes penales, el juicio abreviado a que se acogió y la colaboración brindada a las autoridades. Este procesado aceptó su participación en el ilícito tanto en la fase investigativa como en el acto de audiencia, por lo que lo ubicamos como **autor** del delito de intento de tráfico internacional de drogas; se le encontró la droga adherida a su cuerpo y todo apunta a que viajó a nuestro país con la misión específica de recoger la heroína para trasladarla presuntamente a su país de origen.-

**QUINTO:** La Licda. Xiomara Vallarino en su condición de abogada defensora de **Alejandro James y Yahaira Zúñiga Araya**, luego de ponderar las actuaciones que consideraba vulneraban el debido proceso y ameritaban la nulidad de lo actuado, indicó que sus representados tenían derecho de todas formas a que se le reconociese circunstancias modificativas de su responsabilidad penal, además que no registran antecedentes penales y tienen derecho a los beneficios del juicio abreviado y el tiempo que llevan detenidos por este caso, resaltando que habría que determinar los grados de participación en el delito de cada uno de sus defendidos, ya que Jahaira no es mencionada al momento en que se daba el asunto de la droga, ni en su teléfono se encontró comunicación con los otros implicados.-

**SEXTO:** En cuanto al procesado **Alejandro James**, concluye el Tribunal que aun a pesar de que al rendir indagatoria negó en principio estar enterado del asunto, lo cierto es que en el Crucero en que viajaban los norteamericanos se encontró una fotografía suya, lo que se traduce sin mayor problemas en que era partícipe con conocimiento de causa de esta operación ilícita; o sea, debía entrar en contacto con el ciudadano estadounidense a quien no conocía hasta ese momento para suministrarle la sustancia ilícita. Identificado por Alexander Quintero como Alex, el costarricense Alejandro James Wilson fue recogido por éste en compañía de Jahaira en el Hotel Venecia de la ciudad capital el viernes 13 de Diciembre de 2002, trasladándolos a Colón y averiguando si un barco llegaba ese día y dejando las maletas que tenían en la vivienda de Vanessa, hermana de Quintero, a quien James entregó algo de dinero seguramente por el favor de guardar allí las maletas, hasta que el Domingo 15 de Diciembre fueron al Puerto de

Cruceros Coló  000, en donde observaron  , había llegado un Crucero pidiendo James a Quintero que los llevara al Hotel Washington en donde recibió una llamada a su teléfono celular, y al contestar conversó en inglés, apareciendo al poco tiempo un  taxi con los dos norteamericanos quienes fueron llevados a la casa de Cativá donde se cambiaron de ropa y se adhirieron la droga. El procesado Dondi Fogle lo ha ubicado como la persona de la fotografía a quien debería contactar para el asunto de la droga, siendo que correspondió a Alejandro James colocarles las fajas de drogas tanto a Fogle como a su compañera Latoya, coincidiendo en esto Fogle con lo relatado por Latoya. En diligencia de careo sostenida entre Fogle y James, el primero mantuvo que dentro de sus instrucciones se le dijo que cuando llegara a Colón llamara a un número de teléfono que se le proporcionó, a fin de que entrara en contacto con las personas que le proporcionarían la droga, y junto en el número de teléfono se le proporcionó la fotografía, afirmando en ese momento Dodi Fogle que la persona del teléfono y la de la fotografía parecían ser una misma persona.  A fin de cuentas, Alejandro James Wilson aceptó su culpabilidad en el acto de audiencia, ubicándosele al igual que a Fogle como **autor** del delito de intento de tráfico internacional de drogas.-

**SEPTIMO: Yahaira Zúñiga Araya** aparece vinculada a este caso en virtud de haber acompañado desde Costa Rica a Panamá a su compañero sentimental Alejandro James Wilson, persona que aparece como el encargado de suministrar el material nocivo al ciudadano norteamericano, y si bien es cierto Alexander Quintero la señaló de haber ayudado a adherir la droga al cuerpo de los americanos, lo cierto es que este señalamiento

se contrapone a la versión de los hechos rendida por ambos norteamericanos, que no conocían a la joven **Yahaira** por lo que no tenían razones para tratar de ayudarla, cuando aseguraron que este trabajo corrió por cuenta únicamente de Alejandro James Wilson. La versión brindada por Dondi Fogle encaja con el desarrollo de los hechos, por lo que la participación pasiva de Yahaira Zúñiga es ubicada dentro del grado de **complicidad secundaria**, al no comprobársele el haber colaborado en el asunto de las fajas contentivas de la droga, como tampoco pudo establecerse de manera cabal su conocimiento del contenido de los maletines en que debió ir la droga, a diferencia de la situación de James Wilson y a diferencia de lo sucedido con la norteamericana Latoya Richardson. Aceptó su responsabilidad penal, pero la defensa entre otros argumentos llamó la atención sobre el grado de participación criminal que pudiese tener esta joven en el delito.-

**OCTAVO:** Continuando con el hilo del proceso, la defensa de los ciudadanos costarricenses alegó entre otras cosas vulneraciones al debido proceso, en cuanto a las formalidades requeridas para realizar una diligencia de allanamiento en una nave de bandera extranjera, como efectivamente lo era el Crucero Carnival en uno de cuyos camarotes viajaban los norteamericanos Latoya y Dondi. Esto es cierto y debió requerirse la autorización o visto bueno del respectivo Agente Diplomático, lo que en esta ocasión no se dió, pero no debemos perder de vista que fruto de esta diligencia se obtuvo en ese camarote, únicamente evidencia consistente en la fotografía de Alejandro James Wilson y cierta cantidad de marihuana, la cual no puede ser tenida en cuenta para efecto de estas investigaciones en razón de la forma irregular como se obtuvo

estas pruebas contraviniendo efectivamen el debido proceso constitucionalmente instituido en nuestro medio. Y prueba de ello es que ni a Fogle ni a Latoya se les inquirió siquiera en juicio sobre esta ínfima cantidad de marihuana destinada sin duda al consumo personal de uno de ellos. Sin embargo, debemos aclarar que una cosa no puede enervar la otra, y el resto de las pruebas recabadas guardan plena validez, tomando en cuenta que se detectó la droga no en el buque crucero, sino en tierra firme producto de un operativo de vigilancia y seguimiento verificado por unidades de Narcóticos de la Policía Técnica Judicial, funcionarios en pleno ejercicio de sus funciones y que no se apartaron del marco legal, toda vez que tenían información que esas personas se conjugarían para tratar de sacar sustancias ilícitas de nuestro territorio para ser llevada al extranjero. Es así como ante todo el movimiento sospechoso que consta en los inicios de este expediente, típico de este tipo de situaciones relacionadas con drogas, se llega al momento cumbre en que se intercepta el vehículo en que viajaban estas personas, quienes son requisadas ante la fuerte sospecha de que llevaban drogas consigo, situación que no vulnera disposiciones procedimentales relacionadas con el debido proceso, ya que toda requisa efectuada en las calles en medio de operativos policiales resultarían ilegales, e ilegales lo ilícito que con motivo de las mismas se ocupase en ese momento. La fotografía de James Wilson en el camarote de Fogle no es lo que ha determinado su culpabilidad, cuando ha quedado claro que la droga se ocupó en tierra firme y también quedó establecido que fue este ciudadano costarricense quien la montó en el cuerpo de los norteamericanos. Como remate, este ciudadano extranjero se declaró culpable del delito cometido.-

**NOVENO:** La defensa de **Alexander Quintero** solicitó su absolución argumentando fundamentalmente que éste no llegó a entablar conversación con los americanos, que no sabía del contenido de los maletines y que sencillamente aparece involucrado por dedicarse a sus labores habituales de ser contratado para realizar viajes y transportes a personas que requiriesen sus servicios, y como prueba de ello, la Licda. Giovani Garrido aportó una fotografía en la que aparece su poderdante en compañía de James, como muestra de que antes de este incidente ya mantenían relaciones de negocios de este tipo, o sea de servicios de transporte.-

**DÉCIMO:** No se pone en duda que con anterioridad a este caso, Quintero haya prestado algún tipo de servicio a Alejandro James, pero lo cierto es que como consta en las generales brindadas por Alexander Quintero al momento de rendir indagatoria, contaba en ese entonces con 27 años de edad con estudios hasta tercer año de secundaria (véase fs 73), por lo que no puede considerarse que permaneciese ajeno a todo este extraño movimiento que se dió, siempre delante de sus narices, cuando prácticamente le tocó reunir a James Wilson con el norteamericano Fogle, y estando el ciudadano costarricense hospedado en la comodidad de un hotel en la ciudad capital, tuviese que dejar las maletas en algún lugar de Colón a la espera de que apareciese el norteamericano, luego de lo cual presencia el momento en que estos señores entran a una de las habitaciones de la vivienda de Vanessa Ruíz de Montenegro, hermana de Alexander, en donde estaban las maletas, y es en ese momento en que la droga es incorporada a la anatomía de Dondi Fogle y Latoya Richardson. Ninguna persona de la edad de Quintero y que se mueve en el mundo social que rodea a las

ciudades de Colón y Panamá, puede ser tan ingenuo como para decir que no advirtió que se trataba de alguna situación francamente irregular y que todo indicaba que se trataba de un asunto de drogas. Más aún considerando que apareció a bordo de un crucero un ciudadano norteamericano en compañía de una mujer, a quien no conocían, lo recogieron y llevaron de inmediato a la vivienda en que se hallaba la droga, tras lo cual lo devolvían al barco cuando fueron interceptados y detenidos por las unidades de narcóticos. Preguntamos qué clase de actividad lícita pretende insinuar Alexander Quintero en esta ocasión? Los ciudadanos Norteamericanos ni siquiera hablaban español. Por lo demás, procuró relatar lo sucedido de manera detallada pero excluyéndose de cualquier conocimiento de causa, inaceptable por las razones indicadas. Su participación criminal fue el haber prestado a los autores del delito un auxilio fundamental en sus pretensiones ilícitas, como lo fue la facilitación del transporte, conductor y el lugar en donde se mantuvo la droga hasta que dispusieron de ella (art. 39 del Código Penal). Lo encontramos penalmente responsable como **autor primario** del delito de Tráfico Internacional de Drogas, en la modalidad de intentar sacar droga de nuestro país con destino a otro.-

UNDÉCIMO: En cuanto a **Vanessa Ruíz de Montenegro**, a solicitud de su hermano Alexander Quintero accedió guardar las maletas de los ciudadanos costarricenses, pero ha negado en todo momento tener conocimiento de su contenido ilícito y que se le pagó para ello, pero este es prácticamente el mismo argumento utilizado por su hermano, por lo que estima el Tribunal que no puede habérsele escapado de lo que se trataba, máxime cuando aparecieron en escena los ciudadanos estadounidenses y

penetraron cas  que de manera directa  la recámara en compañía de uno de los "ticos", situación que forzosamente debió haber llamado su atención, pero al parecer se hizo de la "vista gorda" ante una evidente situación anómala. Su actitud pasiva ante el delito evidente implica un auxilio a los autores principales, que encuadra dentro de la **complicidad secundaria** de que se habla en el artículo 40 del Código Penal, misma actitud pasiva adoptada por Yahaira Zúñiga Araya ante los hechos que se estaban desarrollando.-

**DUODÉCIMO:** Corresponde ahora determinar la sanción que corresponde a cada una de las personas encontradas culpables del delito anotado, en sus diferentes modalidades de participación criminal. Veamos.

**(1) DONDI FOGLE:** nacido en Los Estados Unidos de América el 10 de Enero de 1974, cuenta actualmente con 30 años de edad. Lógicamente, no registra antecedentes penales en nuestro medio. Se encuentra confeso de manera amplia en cuanto a su participación y a la de su compañera Latoya. Para la determinación de la pena que corresponde a este señor, tomaremos en cuenta que no estamos en presencia de un delito consumado propiamente hablando sino de uno frustrado, el que sin embargo es sancionado en nuestra legislación penal con igual pena al delito ejecutado a cabalidad: "El que introduzca droga al territorio nacional, aunque sea en tránsito, la saque o la **intente sacar**, en tráfico o tránsito internacional con destino hacia otros países, será sancionado con prisión de 8 a 15 años (art. 255 C.P.)." Pero no puede tener el mismo grado de culpabilidad aquella persona que efectivamente haya introducido o sacado droga del territorio nacional que aquella

que lo haya intentado sin éxito. No debe perderse de vista sin embargo que se trató de traficar con heroína, de alta cotización en el mercado clandestino internacional, así como de alta peligrosidad, lo que encuadra dentro de las situaciones previstas en los numerales 2 y 7 del artículo 56 del Código Penal para la determinación de la pena, cuando se indica allí que deberá ser tomado en cuenta la importancia del daño **o del peligro**; en esta caso hay que considerar el notable peligro que representa la heroína para la sociedad y su valor o importancia. Hemos de considerar además la conducta del agente posterior al hecho punible o delito (num. 6 del art. 56 C.P.), consistente en la actitud pasiva asumida por Dondi Fogle cuando procedió a relatar ampliamente los pormenores de su participación en el ilícito. Aunque se le detuvo en una situación de flagrancia, se ha confrontado el caso que la persona no colabora lo más mínimo y hasta dilata las investigaciones, lo que no ha ocurrido en esta ocasión. Conjugando todo lo anterior, se le sanciona con la pena base de 10 años de prisión, o sea 120 meses, pena a la que se reconoce una rebaja de un tercio (1/3) como beneficio procesal por el juicio abreviado a que se acogió a solicitud de su abogado defensor de oficio (art. 2528 C.J.), quedando establecida de esta manera una sanción neta definitiva de **ochenta (80) meses de prisión** e inhabilitación para el ejercicio de funciones públicas en nuestro medio por un lapso de 5 años, aunque no está demás anotar que realmente son exigüas las posibilidades que estos extranjeros puedan llegar a desempeñar algún cargo público en nuestro país. No concurren circunstancias modificativas de responsabilidad penal como la confesión, debido a la situación de flagrante delito en que se le detuvo.-

19

(2) **LATOYA RICHARDSON**: nacida también en Los Estados Unidos de América, el día 10 de Julio de 1977, con 27 años de edad actualmente, es soltera y tiene estudios universitarios. No tiene antecedentes penales en nuestro medio. Ubicada como cómplice primaria y habiéndose explicado su grado de culpabilidad, se le sanciona con 8 años de prisión equivalentes a 96 meses de prisión, pena a la que se aplica una rebaja de un tercio (1/3) como beneficio procesal por el juicio abreviado a que se acogió a solicitud de su abogada defensora oficiosa (art. 2528 C.J.), que dando establecida de esta manera una sanción neta final de **sesenta y cuatro (64) meses de prisión** e inhabilitación para el ejercicio de funciones públicas en nuestro medio por 3 años, una vez cumplida la pena principal. No concurren circunstancias modificativas de responsabilidad penal como la confesión, debido a la situación de flagrante delito en que se detuvo a estos señores. Aclaramos que la complicidad primaria es sancionada en nuestro medio con la misma pena que la ley señala al hecho punible, según el artículo 61 del Código Penal.-

(3) **ALEJANDRO JAMES WILSON**: nacido el 5 de Octubre de 1972 en la provincia de Limón, República de Costa Rica, cuenta con 32 años de edad al momento de emitir esta resolución. Tiene estudios secundarios hasta sexto año y no registra antecedentes penales en nuestro medio. Ubicado como **autor** de este delito de intento de tráfico internacional de drogas, es sancionado igualmente que el norteamericano Fogle con la pena de 10 años de prisión, equivalentes a 120 meses, a los que se les aplica igualmente una rebaja de un tercio (1/3) con motivo del juicio abreviado a que se acogió a solicitud de su abogada

defensora Lic . Vallarino (art. 2528 C.J.), quedando establecida una sanción definitiva de **ochenta (80) meses de prisión** e inhabilitación para el ejercicio de funciones públicas en nuestro medio, por cinco (5) años, una vez cumplida la pena principal. No concurre tampoco en su caso la circunstancia atenuante de confesión. Los parámetros para el establecimiento de esta sanción son los mismos que los utilizados para el norteamericano Dondi Fogle, o sea la peligrosidad de la acción criminal y el valor de la sustancia ilícita (numerales 2 y 7 del art. 56 del Código Penal).-

(4) YAHAIRA ZÚÑIGA ARAYA: nacida el 3 de Julio de 1980 en la provincia de Limón, República de Costa Rica, cuenta actualmente con 24 años de edad, cursó hasta el quinto año de secundaria y no registra antecedentes penales en nuestro medio. Ubicada como cómplice secundaria, su sanción debe ser ubicada dentro de los parámetros previstos para este tipo de situaciones en el párrafo segundo del artículo 61 del Código Penal, en donde se señala que al cómplice secundario le será impuesta pena no menor de la mitad del mínimo, ni mayor de la mitad del máximo de la establecida al respectivo hecho punible o delito. O sea, en este caso que la pena señalada al delito cometido es de 8 a 15 años de reclusión, la pena a imponer por complicidad secundaria debe oscilar entre los 48 (mitad del mínimo) y 90 (mitad del máximo) meses de prisión. Se le sanciona con 48 meses de prisión, pena a la que se reconoce una rebaja de un tercio (1/3) por el beneficio procesal inherente al juicio abreviado solicitado por su abogada defensora (art. 2528 C.J.), quedando así una pena final de **treinta y dos (32) meses de prisión** e inhabilitación para el ejercicio de funciones públicas por dos (2) años una vez

cumplida la pena principal. No concurre la circunstancia

atenuante de confesión, por las razones de in fraganti delito

explicadas.-

(5) **ALEXANDER QUINTERO:** nacido el 25 de Julio de 1975 en la
provincia de Panamá, República de Panamá, cuenta actualmente
con 29 años de edad y tiene estudios secundarios. No registra
hasta el momento antecedentes penales. Ubicado penalmente
responsable como cómplice primario del delito cometido, el
artículo 61 del Código Penal contempla que los cómplices
primarios serán sancionados con la pena que la ley señala para
el hecho punible, o sea, igual que a los autores. Considerando
que definitivamente no tuvo el protagonismo principal en este
asunto, no era el principal beneficiario y en fin, es un
cómplice y no un autor, se procede a sancionarlo con pena de
ocho (8) años o 96 meses de prisión. A esta pena se reconoce
una rebaja de un tercio (1/3) por el juicio abreviado a que se
acogió a solicitud de su abogada defensora (art. 2528 C.P.),
quedando establecida una pena neta final de **sesenta y cuatro
(64) meses de prisión** e inhabilitación para el ejercicio de
funciones públicas por 2 años una vez cumplida la pena
principal. Se aclara que, a criterio de este Tribunal, no
concurre el beneficio procesal de la colaboración brindada a
que hizo alusión la Fiscalía, ya que no puede afirmarse que
una persona esté colaborando con las investigaciones cuando
está asegurando que él no tiene que ver con el asunto, y la
evidencia apunta en sentido contrario. Por estas mismas
razones no concurre tampoco la circunstancia atenuante de
confesión, tomando en cuenta que se declaró inocente de los
cargos formulados en su contra en el acto de audiencia.-

(b) **VANESSA VERONICA RUIZ DE MONTENEGRO**, nacida en 6 de Octubre de 1983 en la provincia de Panamá, cuenta actualmente con 21 años de edad. Es casada, tiene estudios secundarios y no registraba antecedentes penales antes de este caso. Ubicada como **cómplice secundaria**, su sanción debe quedar enmarcada dentro de los parámetros previstos para esta situación en el párrafo segundo artículo 61 del Código Penal, en donde se indica que el cómplice secundario le será impuesta pena no menor de la mitad del mínimo ni mayor de la mitad del máximo de la señalada para el delito cometido. O sea, la sanción deberá ir de 48 a 90 meses de prisión. Se le sanciona con pena de 48 meses de prisión, sanción a la que se reconoce una disminución de un tercio (1/3) como beneficio procesal por el juicio abreviado (art. 2528 del C.P), quedando establecida de esta manera una pena neta final de **treinta y dos (32) meses de prisión** e inhabilitación por un (1) año para el ejercicio de funciones públicas, a computarse igual que a los demás, una vez cumplida la pena principal.-

**DÉCIMO TERCERO:** Se procederá a disponer el comiso y puesta a disposición de la Comisión Nacional para el Estudio y la Prevención de los Delitos Relacionados con Drogas (CONAPRED), según lo previenen los artículos 263 del Código Penal, 29 y 35 del Texto Único de la Ley de Drogas de la República de Panamá, de los dineros que resultaron aprehendidos de manera provisional en esta investigación penal, inclusive el papel moneda de otros países, así como de los teléfonos celulares, por su evidente relación con el delito. A nuestro concepto, no ocurre lo mismo con las prendas aprehendidas provisionalmente a los procesados, ya que no podemos considerar que han sido empleados en la comisión del delito (art. 263 C.P.), así como

tampoco podemos pretender que las mismas son producto de la comisión de dicho delito o han sido utilizadas en la ejecución del mismo (art. 32 Texto Único Ley de Drogas Pmá), cuando como ya explicamos, se trata de un delito frustrado sancionado como ejecutado, y no vemos la vinculación criminal de estas prendas con la ejecución de los pormenores de este delito, considerando que en nuestro medio estos señores no registraban antecedentes penales antes de este caso, inclusive en cuanto a los ciudadanos costarricenses James Wilson y Zúñiga Araya, se aportó el historial penal contentivo de sus antecedentes en su país de origen (véase fs 502 y 586). Algunas de estas prendas llevan impreso el nombre de su propietario. Bien puede deducirse el uso del dinero y los teléfonos celulares en la actividad ilícita, para movilización, comunicaciones, etc, o sea logística en general, mas no así lo relacionado a las prendas. Todas estas evidencias aparecen detalladas de fojas 170 a 173 del expediente. El vehículo utilizado pertenecía a terceros que no guardaban relación con este asunto, por lo que no se incluyó en la diligencia de aprehensión emitida por la Fiscalía de Drogas de Colón y Kuna Yala.-

## PARTE RESOLUTIVA

En mérito de lo anteriormente expuesto, el suscrito JUEZ SEGUNDO DEL CIRCUITO JUDICIAL DE COLON, RAMO PENAL, administrando Justicia en nombre de la República y por autoridad de la Ley, **DECLARA PENALMENTE RESPONSABLES COMO AUTORES DEL DELITO DE TRAFICO INTERNACIONAL DE DROGAS EN SU MODALIDAD DE INTENTO DE SACAR DROGA DE NUESTRO TERRITORIO CON DESTINO A OTRO PAÍS** a los ciudadanos DONDI FLOGLE, varón, nacido en los Estado Unidos de América, el día 10 de enero de 1974, S.S. Nº 116-622-918, soltero, hijo de Martha Fogle,

residente en Estados Unidos, Nueva Yord, Condado Kings, 3-53, Kingsboro, Apto. Nº3, Walkbb, Obrero y Carpintero, Estudios Secundarios. Y LO CONDENA A LA PENA DE OCHENTA (80) MESES DE PRISIÓN E INHABILITACIÓN PARA EL EJERCICIO DE FUNCIONES PÚBLICAS POR CINCO (5) AÑOS UNA VEZ CUMPLIDA LA PENA PRINCIPAl, al ciudadano ALEJANDRO JAMES WILSON, varón, nacido en la República de Costa Rica, el 5 de octubre de 1972; hijo de Hindean Wilson Nash y Alejandro James, cédula 7104-769, residente en Costa Rica, Provincia de Limón, Zona Americana, Licorera Manchaster, estudios secundario, soltero, Y LO CONDENA A LA PENA DE OCHENTA (80) MESES DE PRISIÓN E INHABILITACIÓN PARA EL EJERCICIO DE FUNCIONES PÚBLICAS POR CINCO (5) AÑOS UNA VEZ CUMPLIDA LA PENA PRINCIPAL. SE DECLARA PENALMENTE RESPONSABLE COMO COMPLICE PRIMARIA DEL CITADO DELITO A LA CIUDADANA LATOYA MONIQUE RICHARDSON RICKS, mujer, nacida en los Estados Unidos de América, el 10 de julio de 1977, S.S. Nº124-609-646, hija de Silvia Ricks y Ossie Richardson, residente en Estados Unidos, Nueva Yord, Condado Kings, 11212 Brooklyn, Apto. Nº 13 F Pitkan, estudios universitarios, soltera, católica, Y LA CONDENA A LA PENA DE SESENTA Y CUATRO (64) MESES DE PRISIÓN E INHABILITACIÓN PARA EL EJERCICIO DE FUNCIONES PÚBLICAS POR TRES (3) AÑOS UNA VEZ CUMPLIDA LA PENA PRINCIPAL. SE DECLARA PENALMENTE RESPONSABLE COMO COMPLICE PRIMARIO DEL DELITO DE TRÁFICO INTERNACIONAL DE DROGAS AL CIUDADANO ALEXANDER QUINTERO, varón, panameño, nacido en la Provincia de Panamá el 25 de julio de 1975, céd. 8-701-748, hijo de Josefina Quintero, residente en Panamá, San Miguelito, Pan de Azucar, Calle 2da., Casa C-72, y en Arraijan, Barriada 7 de Septiembre, Los Pinos, Tercera calle mano derecha, conductor de taxi, soltero, estudios secundarios, Y LO CONDENA A LA PENA DE SESENTA Y CUATRO (64) MESES DE PRISIÓN

E INHABILITACIÓN PARA EL EJERCICIO DE FUNCIONES PÚBLICAS POR
DOS AÑOS UNA VEZ CUMPLIDA LA PENA PRINCIPAL. SE DECLARA
PENALMENTE RESPONSABLE COMO COMPLICE SECUNDARIO DEL DELITO
ANOTADO, A LA CIUDADANA YAHAIRA ZÚÑIGA ARAYA, mujer. nacida en
la República de Costa Rica, el 3 de julio de 1980, céd. 7-137-
329, hija de Arturo Zúñiga y María Araya, evangélica, estudios
secundarios, residente en Limón, Barrio Pacuare, Casa NºI-16,
Y LA CONDENA A LA PENA DE TREINTA Y DOS (32) MESES DE PRISIÓN
E INHABILITACIÓN PARA EL EJERCICIO DE FUNCIONES PÚBLICAS POR
DOS (2) AÑOS UNA VEZ CUMPLIDA LA PENA PRINCIPAL. SE DECLARA
PENALMENTE RESPONSABLE COMO COMPLICE SECUNDARIA DEL DELITO DE
TRÁFICO INTERNACIONAL DE DROGA, A LA CIUDADANA VANESSA
VERÓNICA RUIZ DE MONTENEGRO, mujer, panameña, nacida en la
Provincia de Panamá el 6 de octubre de 1983, cédula 8-770-
1613, hija de Josefina Quintero y José María Ruiz, residente
en Colón, Cativá, Villa Guadalupe, Cuarto de alquiler Sector
C, católica, estudios secundarios, casada, Y LA CONDENA A LA
PENA DE TREINTA Y DOS (32) MESES DE PRISIÓN E INHABILITACIÓN
PARA EL EJERCICIO DE FUNCIONES PÚBLICAS POR UN (1) AÑO UNA VEZ
CUMPLIDA LA PENA PRINCIPAL.-

Se ordena el comiso y puesta a órdenes de la Comisión
Nacional para el Estudio y la Prevención de los Delitos
Relacionados con Drogas (CONAPRED), de los dineros y teléfonos
celulares que resultaron aprehendidos dentro de este proceso
penal, inclusive el papel moneda de otros países, en tanto se
ordena la desaprehensión y devolución a su propietario de las
prendas retenidas, por la razones expuestas en el punto décimo
tercero de los fundamentos legales de esta resolución,
aprehensión cuyos pormenores constan de fojas 170 a 173 del
expediente.-

Tómese en cuenta a los procesados el tiempo que llevan detenidos preventivamente por esta causa, como parte cumplida de la pena de prisión impuesta (todos detenidos desde el 15 de diciembre de 2002 a la fecha, a excepción de Vanessa Ruiz de Montenegro quien obtuvo su libertad mediante medidas cautelares distintas a la detención preventiva por razones de estado de embarazo, el día 31 de enero del 2003 según consta a fojas 473).-

En razón de lo anterior y como quiera que el tiempo contemplado para el amamante de la prole ha vencido con creces, se ordena la cancelación de dichas medidas cautelares y se ordena en consecuencia, su detención para el cumplimiento de la pena de prisión impuesta.-

Compúlsese copias autenticadas de esta resolución a la Secretaria General de la Corte Suprema de Justicia, para su debida traducción al idioma inglés para los efectos de la notificación personal de esta sentencia a los ciudadanos estadounidenses Dondi Fogle y Latoya Richardson.-

Comuníquese a las autoridades e instituciones correspondientes todo lo aquí dispuesto.-

FUNDAMENTO DE DERECHO: Artículos 2408, 2409, 2410, 2412 y 2528 del Código Judicial. Artículo 32 del Texto Único de la Ley de Drogas de la República de Panamá. Artículos 30, 38, 39, 40, 46, 47, 52, 55, 56, 57, 58, 61, 255 y 263 del Código Penal.-

Notifíquese y cúmplase,

(firmas atrás...)

LICDO. JUAN ALBERTO ALVARADO E.
JUEZ SEGUNDO DEL CIRCUITO JUDICIAL
DE COLÓN – RAMO PENAL

Licda. Julio Fidel Macía H.
Secretario

JAA/lm.-

n la Ciudad de Colón, a las 8:30
de la _Mañana_ de día 27 de
_agosto_ De 2004
se notificó a FISCAL DE DROGAS
De SENT. # 123

EL SECRETARIO

"Apelo"

n la Ciudad de Colón, a las 2:00
de la _Tarde_ de día 27 de
_agosto_ De 2004
se notificó a LIC. YOVANI GARRIDO
De SENT. N° 123

EL SECRETARIO

Apelo.

n la Ciudad de Colón, a las _____
de la _____ de día _____ de
_____ De _____
se notificó a ALEXANDER QUINTERO
De _____

EL SECRETARIO

NOT.
FOJA 690

LO ANTERIOR ES FIEL COPIA DE SU ORIGINAL
Colón, 13 de 10 de 2005

EL SECRETARIO



**República de Panamá**
**Órgano Judicial**

# SEGUNDO TRIBUNAL SUPERIOR DE JUSTICIA DEL PRIMER DISTRITO

## JUDICIAL DE PANAMÁ, UNO (1) DE JUNIO DE DOS MIL CINCO (2005)

### SENTENCIA 2ª Nº 95

VISTOS:

En grado de apelación ingresa a este Tribunal Colegiado, procedente del Juzgado Segundo del Circuito Judicial de Colón, Ramo Penal, cuyo titular lo es el LICDO. JUAN ALBERTO ALVARADO, la Sentencia Condenatoria N°.123 de 20 de agosto de 2004, proferida dentro del proceso seguido a los señores  DONDI FLOGLE, ALEJANDRO JAMES WILSON, LATOYA MONIQUE RICHARDSON RICKS, ALEXANDER QUINTERO, YAHAIRA ZUÑIGA ARAYA, y VANESSA VERONICA RUIZ DE MONTENEGRO, por el delito contra la salud pública.

Asume  la Representación Social la señora  Fiscal  de Drogas de Colón y Kuna Yala, LICDA. AMINTA MARIELA CORRO N.

La Defensa Técnica de los señores ALEXANDER QUINTERO, LATOYA RICHARSON, DONDI FLOGLE, VANESSA RUIZ DE MONTENEGRO, JAHAIRA ZUÑIGA y JAMES WILSON, se encuentra acuerpada por los letrados YOVANI DENISSE GARRIDO, MARITCENIA PALACIOS, CECILIO CASTILLO, RICARDO

CEREZO, y XIOMARA VALLARINO, respectivamente, quienes a su vez expresaron su disconformidad contra el fallo condenatorio.

ANTECEDENTES

PRIMERO: Mediante Sentencia Nº. 123 de 20 de agosto de 2004, el Juzgado Segundo de Circuito de Colón, Ramo Penal, declaró penalmente responsable como autores del delito de tráfico internacional de drogas en su modalidad de tentativa de sacar droga de nuestro territorio con destino a otro país, a los ciudadanos DONDI FLOGLE, y lo condenó a la pena de ochenta (80) meses de prisión e inhabilitación para el ejercicio de funciones públicas por cinco (5) años, una vez cumplida la pena de prisión; al señor ALEJANDRO JAMES WILSON, lo condena a la pena de ochenta (80) meses de prisión e inhabilitación para el ejercicio de funciones públicas por cinco (5) años una vez cumplida la pena principal.

Asimismo, se declaró penalmente responsable como cómplice primaria a la señora LATOYA MONIQUE RICHARDSON RICKS, y se le condenó a la pena de sesenta y cuatro (64) meses de prisión e inhabilitación para el ejercicio de funciones públicas por tres (3) años una vez cumplida la pena de prisión; se declaró penalmente responsable como cómplice primario de tráfico internacional de drogas al señor ALEXANDER QUINTERO, y le correspondió la pena de sesenta y cuatro (64) meses de prisión e inhabilitación para el ejercicio de funciones públicas por dos (2) años una vez cumplida la pena principal;

delito anotado, a la c   adana YAHAIRA ZUNIGA AR   YA, y le    a la pena de treinta y dos (32) meses de prisión e inhabilitación para el ejercicio de funciones públicas por dos (2) años una vez cumplida la pena principal; se declara penalmente responsable como cómplice secundaria del delito de tráfico internacional de droga, a la ciudadana VANESSA VERÓNICA RUIZ DE MONTENEGRO, y la condenó a la pena de treinta y dos (32) meses de prisión e inhabilitación para el ejercicio de funciones públicas por un (1) año una vez cumplida la pena de prisión. (fs. 655-680)

SEGUNDO:  El pronunciamiento in examine, fue censurado  por la LICDA. YOVANI DENISSE GARRIDO, quien argumenta en lo medular de su escrito de alzada que su representado sirvió como transporte turístico contratado por el señor ALEJANDRO JAMES, quien le indicaba a que lugares dirigirse, servicio de transporte prestado con anterioridad, conociendo que el mismo se dedicaba a negocios lícitos en Costa Rica y no a actividades ilícitas. Además, explica que los sindicados DONDI FLOGLE y LATOYA RICHARDSON negaron conocerlo, por lo que no existe vinculación de su persona con la acción delictiva. (fs. 747-754) Y, es así como solicita previa revocatoria del fallo impugnado, la absolución de su representado.

TERCERO:  En tanto, la LICDA. MARITCENIA PALACIOS,  Defensora de Oficio de la señora LATOYA RICHARDSON, aspira que se reforme la sentencia, advirtiendo que de las constancias procesales se desprende que su representada desconocía de la finalidad ilícita que tenía su visita a Panamá, y que la misma fue obligada por su compañero sentimental DONDY FOGLE, a  efectuar la acción de adherirse al cuerpo las fajas contentivas de la droga, en contra de su voluntad, lo cual es afirmado por el

CUARTO:   A su vez el LICDO. CECILIO CESAR CASTILLO, Defensor de Oficio, del señor DONDI FOGLE, peticiona que se reforme la sentencia apelada, en el sentido de que se le aplique a  su representado una rebaja mayor de la pena impuesta, sobre la base de lo establecido en el artículo 28 del Texto Único de la Ley de Drogas, por su cooperación, ya que únicamente se le reconoció una rebaja por haberse acogido al Proceso Abreviado. ( fs. 758-759)


QUINTO: El LICDO. RICARDO CEREZO, quien representa a  la señora VANESSA RUIZ MONTENEGRO, considera en su escrito de sustentación de la censura que en la instrucción sumarial quedó plenamente demostrado que no hubo comportamiento doloso por parte de su patrocinado, como tampoco se pudo acreditar que el dinero recibido por ella fue concepto de gratificación por la permanencia y custodia del equipaje que contenía la droga, toda vez que su hermano ALEXANDER QUINTERO, como los demás procesados, niegan que la misma tenía conocimiento del ilícito, por lo que pide su absolución. ( fs. 760-772)


SEXTO: Por último, la MGTER.XIOMARA VALLARINO, en defensa de la señora JAHAIRA ZUÑIGA y del señor ALEJANDRO JAMES, considera que las ordenes de allanamiento realizadas tanto en el Crucero Carnival, como en la residencia de VANESSA RUIZ DE MONTENEGRO, son violatorias del contenido del artículo 401 del Código Judicial, ya que el funcionario que actúo como agente especial, carecía en el momento de la idoneidad de abogado requerida para poder actuar, además que la orden en sí no cumple con los requerimientos legales exigidos, como la hora y los motivos,

que solicita se declare _ nulidad. Adicionalmente, se encuentra en desacuerdo con la opinión del Juzgador de Primera Instancia, al considerar que por el solo hecho de que JAHAIRA ZUÑIGA viajó desde Costa Rica con JAMES WILSON, tenía conocimiento del ilícito y que el Juzgador de Primera Instancia le debió reconocer a ALEJANDRO JAMES al momento de la dosificación de la pena las atenuantes por ser delincuente primario y por su confesión. ( fs. 773-782)

SÉPTIMO: Ante tales planteamientos, no se hizo esperar el traslado de la Vindicta Pública, quien recomendó que se confirme el fallo censurado. (fs. 784-789)

FUNDAMENTOS JURÍDICOS

PRIMERO: Una vez surtido el trámite de alzada y concedido en el efecto que demanda la Ley, le corresponde a esta Superioridad, observar sí existen circunstancias que permitan variar o no el criterio del Juzgador primario dentro de los postulados de la **reformatio in pejus**, regulado en el artículo 2424 del texto único del Código Judicial.

SEGUNDO: Es así como aprecia ésta Colegiatura, y conforme a un juicio de tipicidad, que la participación criminal del señor ALEXANDER QUINTERO, se encuentra plenamente comprobada, toda vez que estuvo presente en toda la logística de ésta operación ilícita. De la misma manera, las piezas procesales revelan el elemento del dolo en la conducta de la señora LATOYA RICHARDSON, quien no opuso resistencia al rol o actividad que desarrollaba.

FOGLE, no se apreci  ircunstancias que justifiquen el  conocimiento de atenuantes que permitan reducir el monto de la pena de prisión impuesta, máxime cuando el mismo fue aprehendido en grado de flagrancia, y además todos los participes fueron detenidos a raíz de la ejecución de un mismo operativo de vigilancia, y no por una supuesta cooperación de su parte.

CUARTO: En relación a las argumentaciones esgrimidas a favor de la señora VANESSA RUIZ DE MONTENEGRO, se colige que las mismas no la eximen de responsabilidad penal, dado que las circunstancias de ésta operación criminal, son en extremo evidentes, como para  impedir de que ésta no se percatara de dicha actividad ilícita, siendo entonces notoria su participación al permitir el ingreso de personas extrañas a su recámara, con el único fin de que éstas se equiparan con las fajas contentivas de la droga.

QUINTO: Asimismo, no se aprecia elementos de juicio que permitan invalidar las diligencias de allanamiento, y en especial, la de la nave  se surtió con la participación del Capitán, Jefe de Seguridad, representante de la naviera, y del funcionario de instrucción. En otro orden de ideas, se advierte que la calidad de delincuente primario del señor ALEJANDRO WILSON, no constituye una atenuante, sino un factor para fijar la pena base, en función a los elementos que consigna el artículo 56 del Código Penal, y dicho criterio debe respetarse en función al principio de discrecionalidad del juez.

Adicionalmente, no se materializan los elementos constitutivos de una confesión de parte del señor WILSON, toda vez que el mismo fue aprehendido precisamente

aprecia una clara participación del señor WILSON, quien en compañía de la señora

JAHAIRA ZUÑIGA, facilitaron cada paso de la operación delictiva, circunstancias que

también se desprenden del señalamiento del señor ALEXANDER QUINTERO.


SEXTO: Es así como esta Corporación Judicial, colige que la medida jurídica asumida

por el A quo, se ajusta a la realidad de los hechos y es cónsona con el Derecho positivo

vigente, motivo por el cual debe prohijarse, y en ese sentido ha de pronunciarse la

Sinergia.


## PARTE RESOLUTIVA

En mérito de lo anteriormente expuesto, el SEGUNDO TRIBUNAL SUPERIOR

DE JUSTICIA DEL PRIMER DISTRITO JUDICIAL DE PANAMÁ, administrando

justicia en nombre de la República y por autoridad de la Ley,     CONFIRMA la

Sentencia Condenatoria impugnada.

FUNDAMENTO DE DERECHO: Artículos 2, 128, 2424, 2425 y 2427 del

Código Judicial.

DEVUELVASE,


MAG. ANDRÉS A. ALMENDRAL CRUZ


MAG. ELVIA M. BATISTA SOLIS

Mgter.
Rolando Quezada Vallespi


MAG. ROLANDO QUEZADA VALLESPI

*Ministerio de Gobierno y Justicia*
*Dirección General del Sistema Penitenciario*

*Centro Femenino de Colón*

Colón, 18 de octubre de 2005.

*Informe Psicológico*

**Datos Generales:**

| | |
|---|---|
| Nombre: | Latoya Richardson Ricks |
| Edad: | 28 años |
| Fecha de nacimiento: | 7 de octubre de 1977 |
| Escolaridad: | 2do. año universitario en enfermería |
| Dirección: | 60 Glenmore Ave. Brooklyn N. Y. 11212. |

**Motivo de estudio:**

Interna extranjera con posibilidad de repatriación a su país de origen.

**Breve Historia Personal y Familiar:**

Señala provenir de un hogar incompleto funcional. Se cría propiamente con su madre quien reside en los Estados Unidos. Siendo dos hermanos, manifiesta ser la mayor. Comparte que cursaba estudios universitarios en enfermería, el segundo año, cuando quedo privada de libertad junto con su conjugue, que igualmente permanece detenido en el Centro de Rehabilitación Nueva Esperanza. No posee hijos.

Con relación a su relación afectiva con su conjugue, señala que esta finalizó, al considerar la misma que el mismo no fue sincero ni justo con ella, y que es el autor de los años que lleva privada de libertad y lejos de su familia.

**Situación actual:**

Interna primaria que ingresa por el delito de Trafico Internacional de Drogas. Condenada a 64 meses de los cuales lleva cumplido 34.

En relación al delito señala que es culpable porque estaba con su conjugue y traía la droga, pero que se considera inocente pues ignoraba que el mismo venía con dicha sustancia. Agrega que venía con intención de pasar una vacaciones a Panamá y terminó privada de libertad.

Comparte que durante el tiempo que lleva detenida ha sido autodidacta, en la instrucción de su carrera interrumpida, enfermería. Ha participado de actividades culturales desarrolladas en el Centro Femenino, manifiesta la interna.

No cuenta con visita, dad su situación de extranjera. Mantiene comunicación telefónica con su madre, bajo la autorización y supervisión de la dirección del centro.

que ocupaban, pues el padre convivió con ella solamente durante su primer año de infancia, por lo que no estableció vínculo afectivo con el mismo.

Explicó la entrevistada haber venido a nuestro país de paseo en un crucero, acompañada de su pareja, que está recluído también en el Complejo Nueva Esperanza. Durante su estancia en Colón, permanecieron en el domicilio de una persona dedicada a negocios ilícitos con estupefacientes, lo cual según indicó ella desconocía, no así su pareja, pero al darse cuenta, no pudo hacer nada porque se hallaba en un lugar donde no podría desenvolverse sola. Agregó que al tratar de abordar la embarcación para realizar el viaje de regreso a su país, el vehículo que los trasladó al puerto fue interceptado por las autoridades, siendo decomisada la mercancía (droga) que llevaban.

Expresó la interna Richardson, que solicita la repatriación porque no tiene parientes aquí, por lo que todo le ha sido más difícil, sin visitas ni apoyo de nadie. Agregó muy compungida que se siente arrepentida de todo lo ocurrido, ya que por su culpa la madre está sola y no pueden compartir como siempre lo habían hecho.

**Aspecto de internamiento**:

Refirió la entrevistada, tener aproximadamente treinta y cuatro meses detenida, actualmente está ubicada en la galería D, celda 2, de la sección femenina del C.P.N.E.. Desde su ingreso se congrega en la iglesia evangélica; ha tenido participación en un reinado interno y en el sociodrama presentado recientemente en el Día del Detenido. Labora en autogestión hace siete meses en la venta de productos refrigerados, anterior a esto, en la venta de frituras (dos a tres meses). Señaló que el desconocimiento del idioma español ha limitado su participación en charlas y otras actividades educativas

**Conclusiones**:

La interna Latoya M. Richardson R., ha manifestado expresamente interés por el traslado hacia su país, en virtud de que no ha contado con apoyo para satisfacer sus necesidades materiales y afectivas en el transcurso del internamiento, debido a la lejanía de los familiares.

Licda. Judith C. de Griffith
Trabajadora Social C.P.N.E.
TRABAJADORA SOCIAL
Reg. No. 529

## INFORME SOCIAL
Repatriación

**Fecha**:  20 de octubre del 2005

**Unidad que remite**:  Licdo. Ricardo Calvo, Director del Complejo Penitenciario Nueva Esperanza, en atención a nota enviada por la Licda. Dora de Powell, Directora del Centro Femenino de Colón.

**Motivo de referencia**:  Trámite para posible traslado hacia los Estados Unidos.

**Datos generales de la interna**:

| | |
|---|---|
| Nombre: | Latoya Monique Richardson Ricks |
| Ps.: | 739456890 |
| Edad: | 28 años |
| Nacionalidad: | estadounidense |
| Delito: | contra la salud pública |

**Situación social**:

La interna Latoya M. Richardson R., manifestó tener su residencia permanente en Estados Unidos, donde vivía con la madre biológica de 43 años, quien actualmente se encuentra sola en el apartamento que ocupaban, pues el padre convivió con ella solamente durante su primer año de infancia, por lo que no estableció vínculo afectivo con el mismo.

Explicó la entrevistada haber venido a nuestro país de paseo en un crucero, acompañada de su pareja, que está recluído también en el Complejo Nueva Esperanza. Durante su estancia en Colón, permanecieron en el domicilio de una persona dedicada a negocios ilícitos con estupefacientes, lo cual según indicó ella desconocía, no así su pareja, pero al darse cuenta, no pudo hacer nada porque se hallaba en un lugar donde no podría desenvolverse sola. Agregó que al tratar de abordar la embarcación para realizar el viaje de regreso a su país, el vehículo que los trasladó al puerto fue interceptado por las autoridades, siendo decomisada la mercancía (droga) que llevaban.

Expresó la interna Richardson, que solicita la repatriación porque no tiene parientes aquí, por lo que todo le ha sido más difícil, sin visitas ni apoyo de nadie. Agregó muy compungida que se siente arrepentida de todo lo ocurrido, ya que por su culpa la madre está sola y no pueden compartir como siempre lo habían hecho.

**Aspecto de internamiento**:

Refirió la entrevistada, tener aproximadamente treinta y cuatro meses detenida, actualmente está ubicada en la galería D, celda 2, de la sección femenina del C.P.N.E.. Desde su ingreso se congrega en la iglesia evangélica; ha tenido participación en un reinado interno y en el sociodrama presentado recientemente en el Día del Detenido. Labora en autogestión hace siete meses en la venta de productos refrigerados, anterior a esto, en la venta de frituras (dos a tres meses). Señaló que el desconocimiento del idioma español ha limitado su participación en charlas y otras actividades educativas

**Conclusiones**:

La interna Latoya M. Richardson R., ha manifestado expresamente interés por el traslado hacia su país, en virtud de que no ha contado con apoyo para satisfacer sus necesidades materiales y afectivas en el transcurso del internamiento,  debido a la lejanía de los familiares.

**MINISTERIO DE GOBIERNO Y JUSTICIA**
Dirección General del Sistema Penitenciario

Departamento de Salud

**RECETA MEDICA**

Fecha: _14-oct-05_
Seguro Social: _____

NOMBRE: _La Toye Richarson_

**Rx**

A. Quien Concierne:

Por medio de la presente se hace constar q' la interna La Toye Richarson se le realizaron varios examen de laboratorios y valoración médica por lo cual referimos q' la interna se encuentra en buen estado de salud física y mental.

Atte

**Dr. Victor Mateos**
Doctor MEDICINA GENERAL
REG. 2940

# REPUBLICA DE PANAMA
## MINISTERIO DE GOBIERNO Y JUSTICIA
### DIRECCION GENERAL DEL SISTEMA PENITENCIARIO

*Mandamiento número:* **1400-DGSP**

*Por el presente mandamiento el jefe de :* **CENTRO FEMENINO DE COLON**

*recibirá y mantendrá con las seguridades necesarias a:* RICHARDSON RICK, LATOYA MONIQUE

O

*Cédula* PS-07-394-56890      *Nacionalidad* PANAMEÑA

*condenado a cumplir la pena de*      0 *Años*     64 *Meses*      0 *Días*   *prisión*      0 *Días Multa*

*por el delito de*   TRAFICO INTERNACIONAL DE DROGAS EN SU MODALIDAD DE INTENTO DE SACAR DROGA DE NUESTRO TERRITORIO CON DESTINO A OTROS PAISES

*perjuicio de*

*denunciante*

*según sentencia de fecha*   20/08/2004

*proferida por*   JUZG. 2DO. DEL CTO. JUDICIAL DE COLÓN RAMO PENAL

*que*   CONFIRMA EL 2DO. TRIB. SUPERIOR DE JUSTICIA EL 01/06/2005

*Este reo tiene derecho a que se le descuente como parte cumplida de la pena impuesta, el tiempo que tiene de estar*

*detenido que principió el*   15/12/2003

SEGÚN OFICIO No. 1647 DE 25/08/2005 DEL JUZG. 2DO. DEL CTO. PENAL DE COLÓN

*Panamá*   Martes 11 de Octubre de 2005

Licda. ROSA CARDENAS
*SubDirectora General del Sistema Penitenciario*

### COMPUTO

*Este reo cumple 1/3 de la pena, el día* 25/09/2004     *la 1/2 pena el día*     **15/08/2005**

*las 2/3 partes el día*   **05/07/2006**     *y la total de la misma, el día*   **15/04/2008**

*Jueves 13 de Octubre de 2005*                                        *Página 1 de 1*

*Firma:*



## República de Panamá

MINISTERIO DE GOBIERNO Y JUSTICIA
DIRECCIÓN GENERAL DEL SISTEMA PENITENCIARIO
PANAMA I, PANAMA

No.1668-DGSP.DAL.

# CERTIFICACIÓN

**El Director General del Sistema Penitenciario
en uso de sus facultades legales,**

## CERTIFICA:

Que la señora **LATOYA MONIQUE RICHARDSON RICKS**, con pasaporte No.739456890, de nacionalidad estadounidense, fue condenada por el Juzgado Segundo de Circuito Judicial de Colón, Ramo Penal, según sentencia de 20 de agosto de 2004, confirmada por el Segundo Tribunal Superior de Justicia del Primer Distrito Judicial de Panamá, mediante Sentencia 2ª No.95 de 1 de junio de 2005, a la pena de sesenta y cuatro (64) meses de prisión, por el delito de Tráfico Internacional de Drogas en su modalidad de Intento de Sacar Droga de Nuestro Territorio con Destino a Otro País y actualmente se encuentra recluida en el Centro Femenino de Colón.

Que el día 15 de diciembre de 2002 fue puesta en ejecución la pena, por lo que el total de la misma la culminará el 15 de abril de 2008.

Dada en la ciudad de Panamá, República de Panamá, a los nueve (9) días del mes de noviembre de 2005.

**DR. JOSÉ ALBERTO CALDERÓN A.**
Director General del Sistema Penitenciario

AIS/idec